**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**HEALTHSOUTH CORPORATION, a Delaware corporation,**

Plaintiff,

v.

**HEALTH FITNESS PHYSICAL THERAPY, INC., a Minnesota corporation; ORTHOPEDIC REHABILITATION SPECIALISTS, a Minnesota corporation; MARK SIEWERT; and TERRY BUISMAN;**

Defendants.

Civil No. 00-880 (MJD/JGL)

**REPORT AND RECOMMENDATION**

---

APPEARANCES

Teresa J. Kimker, Esq., for Plaintiff

Marc A. Al, Esq., for Defendants Mark Siewert and Terry Buisman

Michael O. Freeman, Esq., for Defendant Orthopedic Rehabilitation Specialists

---

JONATHAN LEBEDOFF, United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Magistrate Judge of District Court on September 13, 2001 on Plaintiff's Motion for Sanctions Against Defendants Orthopedic Rehabilitation Specialists, Mark Siewert, and Terry Buisman. The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636(b) and D. Minn. LR 72.1(c)(1).

SEP 20 2001
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## I. INTRODUCTION

This lawsuit arises from a purchase by Plaintiff HealthSouth Corporation ("HealthSouth") of several outpatient physical therapy clinics from Defendant Health Fitness Corporation on May 14, 1999. The purchased clinics included two Sports & Orthopedic Physical Therapy ("SOPT") clinics in Minneapolis. HealthSouth alleges that two SOPT therapists, Defendants Mark Siewert and Terry Buisman, opened their own clinic, Orthopedic Rehabilitation Specialists ("ORS") on the day after the sale to compete with the SOPT clinics purchased by HealthSouth. HealthSouth accuses Siewert and Buisman of absconding with SOPT patient relationships, physician referrals, and employees in violation of the purchase agreement. HealthSouth believes the key issue is what actions Siewert and Buisman took to establish the ORS clinic prior to the May 14, 1999 sale. According to HealthSouth, Siewert and Buisman claim they did not have any serious intention to open the ORS clinic until after they received termination notices from Health Fitness Physical Therapy, Inc. on May 14, 1999, and any previous steps to establish the ORS clinic was only part of their "back-up plan."

HealthSouth now moves for sanctions against Defendants ORS, Mark Siewert, and Terry Buisman (collectively "the ORS Defendants") on the grounds that the ORS Defendants produced intentionally altered documents during discovery, failed to produce relevant documents during discovery, gave

evasive and improper responses to requests for admission, and gave false testimony in depositions. HealthSouth contends that the alleged conduct thwarted its ability to obtain discovery and develop its claims. As relief, HealthSouth asks the Court to enter default judgment, dismiss the ORS Defendants' counterclaim, and award attorneys' fees and costs.[1] HealthSouth requests alternative sanctions if judgment is not entered. The ORS Defendants respond that each of HealthSouth's allegations is untrue and lacks evidentiary support.

## II. DISCUSSION

HealthSouth urges the Court to impose sanctions pursuant to Federal Rule of Civil Procedure 37(b)(2) and the courts' inherent authority. Under Rule 37(b)(2), a court may sanction a party who fails to comply with a court order. See Fed. R. Civ. P. 37(b)(2). In addition to the authority granted by Rule 37, courts have the inherent power to sanction a party for discovery abuse. See Roadway Express v. Piper, 447 U.S. 752, 764-65 (1980). When the conduct in question "could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power." Chambers v. NASCO, Inc., 501 U.S. 32, 50 (1991).

---

[1] Because HealthSouth asks for dispositive relief, this Court must address the motion in a report and recommendation.

**A. HealthSouth's Allegation that the ORS Defendants Intentionally Altered Documents During Discovery**

Specifically, HealthSouth asserts that the ORS Defendants altered a date on a health care provider enrollment application they submitted to Medicare. The form contains a space in which to write the date the applicant business was established. On the copy of the application received from the ORS Defendants during discovery, the date for commencement of ORS's operations is May 17, 1999. (Kimker Aff. Ex. 4 at 1, 3.) The copy received from Medicare, however, shows the date April 1, 1999. (Kimker Aff. Ex. 5 at 1, 3.)

HealthSouth argues that the dates are the only difference between the two copies of the application, and therefore, the ORS Defendants must have altered the copy they produced in discovery because the original document would have supported HealthSouth's claim that the ORS Defendants established their clinics before May 17, 1999. The ORS Defendants explain that the document was not altered, but that the original application was mostly filled out, copied, and then used as a template repeatedly for individual therapists' applications to Medicare. Both ORS and each individual therapist were required to enroll and obtain provider numbers from Medicare. Furthermore, Buisman admits he wrote multiple artificial dates of ORS's inception in various applications because Medicare requires the applications to evidence the applicants' seriousness, the logic being that the longer a business has existed, the more serious the applicant is. Defendants also explain that

providing the April 1, 1999 date to Medicare would facilitate their ability to bill retroactively. Both Buisman and Siewert surmise that ORS's file copy may have been corrected with the true commencement date of operations. The ORS Defendants admit their inability to remember when they may have changed the date and why their copy of the application is different from Medicare's. Defendants acknowledge their record-keeping was "sloppy," but point out they produced the copy they had.

After a review of the documents, the Court is unable to determine conclusively that the ORS Defendants intentionally altered their copy of the document for the purpose of obstructing discovery. While it is true that the dates on the Medicare version and the ORS version differ, the ORS Defendants offer plausible explanations. In that way, this case is distinguishable from those on which HealthSouth relies. See Keefer v. Provident Life & Accident Ins. Co., 238 F.3d 937, 940 (8th Cir. 2000) (upholding dismissal of case where the plaintiff admitted he altered documents produced in discovery); Chrysler Corp. v. Carey, 186 F.3d 1016, 1021 (8th Cir. 1999) (upholding entry of judgment where evidence presented at trial conclusively established discovery abuse). In the present case, there is no admission of wrongdoing by the ORS Defendants or incontrovertible evidence that they altered documents to thwart discovery. Rather, the value of the evidence before this Court pivots on credibility, and such a determination is not appropriate or warranted at this stage of the

litigation. Although HealthSouth may be able to persuade a jury that the ORS Defendants intentionally altered their version of the application, the Court does not have adequate evidence before it to conclude that sanctions are justified under either Rule 37 or the courts' inherent power.

In addition, the Court finds that Rule 37(b)(2) does not apply to the conduct attributed to the ORS Defendants. Rule 37(b)(2), on which HealthSouth relies, provides for sanctions when a party fails to obey a court order. See Fed. R. Civ. P. 37(b)(2). The party asking for sanctions must identify "an order compelling discovery, a willful violation of that order, and prejudice to the [moving] party." Chrysler Corp., 186 F.3d at 1019 (citations omitted). HealthSouth asserts that the ORS Defendants violated this Court's Order of June 11, 2001, in which the Court in part denied as moot HealthSouth's motion to compel information about ORS's reimbursement contracts. This information would encompass the Medicare application now at issue.

HealthSouth's position is specious for several reasons. First, because this Court denied HealthSouth's request as moot, there was no order compelling discovery. Second, although HealthSouth submits that the Order implicitly required the ORS Defendants to produce an unaltered version of the Medicare application, the Order in no way can be read to impose such a requirement. Rather, both the Court and HealthSouth accepted the ORS

Defendants' representation that they had searched in good faith for all relevant documents and produced them. Third, the Court has already found that HealthSouth has not produced sufficient evidence of an intentional alteration, which would be necessary to find a "willful violation." Finally, HealthSouth has not shown that the Medicare version of the application is or was in the ORS Defendants' possession. Cf. Chrysler Corp., 186 F.3d at 1019 (upholding entry of judgment where party represented during discovery that certain documents did not exist, but later attempted to use those documents at trial).

**B. HealthSouth's Claim that the ORS Defendants Failed to Produce Relevant Documents During Discovery**

HealthSouth contends that the ORS Defendants failed to produce relevant documents such as Buisman's original Medicare enrollment application and other business correspondence indicating that the ORS Defendants communicated with third-party insurers before May 17, 2001. HealthSouth eventually received the documents from the third-party insurers. The ORS Defendants deny concealing documents and advance their "sloppy record keeping" as an excuse for non-disclosure. Defendants have provided a sworn affidavit, attesting they have produced all relevant documents in their possession, but HealthSouth rejects their attestation.

HealthSouth's position is based on mere speculation. HealthSouth offers no evidence of Defendants' concealment of documents, but merely states that Defendants' claim of not having the documents "defies logic." While

disorderly business practices may defy the logic of some, it is not a basis for sanctions without affirmative proof of willful conduct. See id. HealthSouth does not challenge the ORS Defendants' representation that they cooperated with HealthSouth's third party discovery attempts, even providing authorizations so that HealthSouth could obtain the documents at issue from third parties. This conduct belies HealthSouth's general assertion that the ORS Defendants acted in bad faith during discovery.

The Court finds that the ORS Defendants should not be sanctioned for allegedly failing to produce documents during discovery. HealthSouth has not come forth with proof that the ORS Defendants actually possessed the documents or that they otherwise acted in bad faith.

### C. HealthSouth's Assertion that the ORS Defendants Gave Evasive and Improper Responses to Requests for Admission

HealthSouth challenges the ORS Defendants' responses to four requests for admission: that ORS became a Medica provider prior to May 14, 1999; that ORS became a provider in the Blue Cross Blue Shield of Minnesota Aware Network in January 1999; that in March 1999, Buisman made an application for general enrollment of ORS in the Medicare program; and that ORS obtained a Medicare provider number in April 1999. (Kimker Aff. Ex. 13 at 5-6.) The ORS Defendants denied each of these requests but stated:

> A search of the records maintained by ORS does not support the factual statements drafted by HealthSouth in Requests 23, 24, 25, and 26. HealthSouth has

> served discovery requests on the entities listed in Requests 23, 24, 25, and 26. The responses to these requests may provide information that will require amendments to the responses . . . ."

(Id. at 6.) HealthSouth accuses the ORS Defendants of admitting only to facts which HealthSouth can prove by information from third parties.

HealthSouth's reliance on Rule 37(b)(2) in requesting sanctions for this conduct is misplaced given that there was no previous order compelling discovery. See Chrysler Corp., 186 F.3d at 1019. Rather, Rule 37(c) expressly applies to a party's refusal to admit the truth of a matter as requested under Rule 36 and allows for sanctions only after the opposing party proves the truth of the matter at trial. See Fed. R. Civ. P. 37(c)(2) & advisory committee's note (1970 amendment) ("Rule 37(c) is intended to provide posttrial relief in the form of a requirement that the party improperly refusing the admission pay the expenses of the other side in making the necessary proof at trial."). Accordingly, HealthSouth's motion for sanctions is premature. Because HealthSouth has not proven the truth of the four requests at issue at trial, sanctions should not be granted under Rule 37(c) or the courts' inherent power.

### D. HealthSouth's Allegation that the ORS Defendants Gave False Testimony in Depositions

HealthSouth asserts that Defendants Buisman and Siewert testified falsely at their respective depositions. Regardless of the veracity of

this assertion, Rule 37(b)(2) provides no means of relief because there is no applicable court order compelling their testimony. As to whether sanctions should be imposed under the courts' inherent power, the Court finds they should not.

First, HealthSouth contends that Buisman falsely testified that ORS did not enter into reimbursement agreements with Medicare, Medica, or Blue Cross prior to May 17, 1999. However, HealthSouth submits no evidence directly contradicting this testimony. In its memorandum, HealthSouth references letters Buisman purportedly wrote to Medicare, which HealthSouth states would prove its claim, but HealthSouth did not provide these letters to the Court. If HealthSouth intended to refer to the enrollment applications discussed in Part II.A., those applications, which are by nature preliminary to an agreement, do not prove that ORS entered into reimbursement agreements prior to May 17, 1999. Even so, the copy of the application provided by Medicare shows an application date of May 27, 1999. (Kimker Aff. Ex. 5 at 13.)

Second, HealthSouth avers that Siewert testified falsely that he was not aware of ORS until late April or May 1999. Relying on pages from a daily planner belonging to a real estate broker, HealthSouth contends that Siewert contacted the broker about leasing space property for ORS in early February 1999.

The name "Mark Siewert" is written in the planner on several dates in February and March. There is no indication regarding the substance of the appointment, although a likely inference is that Siewert did meet with the broker to discuss space for ORS since the broker works for the current sublessor of ORS. In addition, it must be noted that Siewert's actual deposition testimony was that he first learned of ORS in the spring of 1999, and when HealthSouth's counsel suggested May 1999, Siewert replied, "Spring. So I'm guessing April or May." (Kimker Aff. Ex. 15.) It is certainly possible that Siewert testified falsely in his deposition, but it is also possible that he was unable to remember the precise dates of events occurring a year and a half before the deposition. The Court concludes that the challenges made to Siewert's deposition testimony are inappropriate in a motion for sanctions. If a party sought pretrial sanctions every time it discovered inconsistencies between deposition testimony and other evidence, courts would hear no other motions and would find themselves making credibility and factual determinations which are properly the function of the ultimate factfinder. Such matters are best left to impeachment efforts at trial. Furthermore, if Siewert did testify falsely, it has not prejudiced HealthSouth's ability to present its case at trial. HealthSouth has evidence which challenges Siewert's credibility, and thus, if anything, his deposition testimony may improve HealthSouth's case. Finally, even if HealthSouth had concrete evidence that

Siewert lied regarding his awareness of ORS, the one instance would not warrant an entry of judgment by default.

Third, HealthSouth claims to possess documents which "raise significant doubt" about the ORS Defendants' assertion that they neither copied patient records before leaving SOPT nor contacted referring physicians prior to May 17, 1999. As support, HealthSouth provided copies of physician referrals dated May 17 and 18, 1999. (Kimker Aff. Exs. 17-21.) Upon review of these exhibits, the Court fails to see how the documents relate to whether the ORS Defendants copied patient records. Furthermore, Defendants have explained that the referrals at issue were signed by Buisman based on verbal orders received from physicians after treatment was rendered in order to complete the patients' medical and insurance record. HealthSouth does not challenge this explanation. Accordingly, the Court finds that HealthSouth has not come forth with sufficient evidence that the ORS Defendants either copied patient records or contacted referring physicians prior to May 17, 1999, and sanctions should not be awarded for this alleged conduct.

## III. CONCLUSION AND RECOMMENDATION

HealthSouth has not come forth with sufficient evidence to conclude at this time that the ORS Defendants intentionally altered documents during discovery, failed to produce relevant documents, gave improper responses to requests for admission, or falsely testified in depositions.

Therefore, default judgment should not be entered against the ORS Defendants for purported discovery abuse under either Federal Rule of Civil Procedure 37(b) or the courts' inherent power. Likewise, the alternative sanctions proposed by HealthSouth – deeming certain facts established, allowing HealthSouth to amend its complaint to add claims for fraud and punitive damages, and awarding fees and costs – are not warranted. Much of the evidence on which HealthSouth relies might prove useful at trial, but it simply does not rise to the level required to impose sanctions.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that HealthSouth's Motion for Sanctions Against Defendants Orthopedic Rehabilitation Specialists, Mark Siewert, and Terry Buisman (Doc. No. 32) be **DENIED**.

Dated: September 20, 2001

JONATHAN LEBEDOFF
United States Magistrate Judge

Pursuant to D. Minn. LR 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties by

OCTOBER 9, 2000, written objections which specifically identify the portions of the proposed findings, recommendations, or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service of the objections. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

**Please forward this announcement to the recipient of this fax.**

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

---

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500